UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | | |
|---|---|---|
| DARLENA SHIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 2:16-cv-170-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Darlena Shields brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

1

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On May 17, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB"). [TR 116-22]. She also protectively filed a

2

Title XVI application for supplemental security income ("SSI") on that date. [TR 123-43]. In both applications, Plaintiff alleged disability beginning March 17, 2012. [TR 116-22, 123-43]. Plaintiff's claims were denied initially and on reconsideration. [TR 51-67, 68-71, 75-77]. On September 16, 2015, Administrative Law Judge ("ALJ") Roger L. Reynolds held an administrative hearing at Plaintiff's request. [TR 89, 549-86]. ALJ Reynolds issued a written decision, denying Plaintiff's claim for benefits, on October 23, 2015. [TR 16-30].

At Step One of the disability determination process, ALJ Reynolds found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 18]. At Step Two, he concluded that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD") with continued nicotine abuse; congestive heart failure; coronary artery disease, rule out cardiac syndrome X; degenerative disc disease of the lumbar spine with disc bulges/protrusions at the L3/4 and L4/5 levels and grade I spondylolisthesis of L5 on S1; non-insulin dependent diabetes mellitus; degenerative joint disease of the right knee; bilateral carpal tunnel syndrome; obstructive sleep apnea; obesity; anxiety disorder NOS (not otherwise specified); and major depressive disorder. [TR 18-19].

At Step Three, ALJ Reynolds determined that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 19-]. In reaching this conclusion, ALJ Reynolds found that "the medical evidence does not prove the severity of nerve root compromise, or ambulation or manipulative difficulties, required to meet or equal a listing in Section 1.00 and following, which discuss musculoskeletal impairments. [TR 19]. He also concluded that Plaintiff did not meet Listing 3.02 (COPD) because she did not "establish qualifying values in sophisticated pulmonary function or spirometric tests in measuring the degree of: obstructive pulmonary disease (FEV1), restrictive ventilator disease (FVC), or chronic impairment of gas exchange." [TR 20]. Plaintiff did not meet the requirements of Listing 3.10 (sleeping disorders) because she did not "prove either a cor pulmonale (failure of the right side of the heart) secondary to chronic pulmonary hypertension (Listing 3.09) or an organic mental disorder (Listing 12.02)." [*Id.*].

ALJ Reynolds then considered the listings under Section 4.00 and following, which pertain to cardiovascular impairments. [TR 20]. He found that the record "does not contain the necessary symptom complexes, clinical signs, functional tests, or diagnostic study results which would invoke any of the cardiovascular

4

listings." [*Id.*]. ALJ Reynolds next discussed Listing 11.14 (pheripheral neuropathies), concluding that Plaintiff did not have "disorganization of motor function in the extremities of the magnitude contemplated in this listing." [*Id.*]. Finally, he determined that Plaintiff's mental impairments did not meet or equal Listing 12.04 (affective disorders) and Listing 12.06 (anxiety-related disorders) because she only had mild restrictions in activities of daily living and moderate difficulties with social functioning and concentration, but had not experienced any extended episodes of decompensation.[2] [TR 20-21].

Before proceeding to Step Four, ALJ Reynolds noted that Plaintiff had filed a previous application for benefits, which was denied by ALJ Gloria York on March 16, 2012. [TR 24]. He observed that her findings would preclude him from making a different finding on Plaintiff's subsequent claim unless there was new evidence or changed circumstances. [*Id.*]. He then explained that

---

[2] At Step Three of his analysis, ALJ Reynolds further noted that Listing 9.00.B.5 (diabetes mellitus) "recognize[es] that diabetes can have effect in other body systems" and "refers the evaluator to other listings contained in 1.00 (musculoskeletal), 2.00 (special senses/vision), 4.00 (cardiovascular), 5.00 (digestive), 6.00 (genitourinary), 8.00 (skin infections), 11.00 (neurological), and 12.00 (mental/cognitive)." [*Id.*]. He then explained that Plaintiff's "treatment records have not exhibited the severity of signs, symptoms, or complications sufficient to meet or medically equal any listing in any of these categories." [*Id.*].
  ALJ Reynolds also considered the additive effects of obesity in evaluating each Listing. [TR 20]. He determined "that the severe impairment of obesity, combined with another impairment or impairments, is not of such a magnitude that it would 'medically equal' a listed impairment." [*Id.*]. However, he did consider obesity in assessing Plaintiff's residual functional capacity prior to Step Four. [*Id.*].

5

"new medical evidence establishes the existence of additional severe impairments and the residual functional capacity merits limitations in addition to those imposed by ALJ York." [*Id.*]. Having surveyed that evidence, ALJ Reynolds determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work, as defined in 20 C.F.R. § 404.1567(c) and § 416.967(b). [TR 21-22]. He explained:

> She cannot climb ropes, ladders or scaffolds, but she can occasionally climb stairs or ramps. She can occasionally stoop, kneel, crouch or crawl. The claimant cannot perform aerobic activities such as running or jumping. She cannot work with her hands over the head. The claimant cannot operate foot pedal controls. She should avoid exposure to concentrated dust, gases, smoke, fumes, temperature extremes, and excess humidity. She should avoid concentrated vibration or industrial hazards. The claimant requires entry-level work with simple repetitive procedures. She can tolerate only occasional changes in work routines. The claimant should work in an object-oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

[*Id.*]. He then found that Plaintiff was unable to perform any past relevant work at Step Four. [TR 28]. However, he noted that transferability of job skills was not material to the disability determination because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." [*Id.*].

6

Nevertheless, ALJ Reynolds proceeded to the final step of the sequential evaluation. [TR 28-30]. At Step Five, he determined that there were a significant number of other jobs in the national economy that Plaintiff could perform. [TR 29]. ALJ Reynolds based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find light unskilled work as an inspector (4,200 Kentucky/300,000 nationally), hand packer (3,200 Kentucky/195,000 nationally), or assembler (4,900 Kentucky/350,000 nationally). [*Id.*]. Such an individual could also find sedentary unskilled work as an inspector (3,800 Kentucky/185,000 nationally), a final assembler (3,700 Kentucky/195,000 nationally), or hand packer (3,400 Kentucky/200,000 nationally). [*Id.*]. Based on the testimony of the VE, ALJ Reynolds found that Plaintiff was capable of making a successful adjustment to other work. [*Id.*]. Thus, he concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from March 17, 2012, the alleged onset date, through the date of the administrative decision. [*Id.*].

ALJ Reynolds's decision became the final decision of the Commissioner when the Appeals Council denied review on July 21, 2016. [TR 9-11]. Plaintiff filed the instant action on September

7

22, 2016. [DE 2]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 13, 15]. Plaintiff argues that ALJ Reynolds's administrative decision is not supported by substantial evidence because he improperly weighed opinions from medical sources and effectively substituted his own judgment for those opinions, resulting in an inaccurate RFC assessment. The Court will address each of these arguments in turn.

## III.

In order to determine whether the plaintiff is able to perform past relevant work, the ALJ must first "evaluat[e] the medical evidence and the claimant's testimony to form an assessment of [his or her] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). The RFC assessment is a determination of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). It is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the

8

claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 416.945(a)(3). The aforementioned medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.945(c).

### A. *Dr. Lohman's Opinion*

A treating source is a "physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." *Id.*

"If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion but must apply other factors to determine what weight to give the opinion." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 437 (6th Cir. 2013) Such factors include "'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc.*

9

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ must articulate "'specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *see also* 20 C.F.R. § 1527(d)(2) (explaining that such deference is given to treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] impairments").

In this case, ALJ Reynolds analyzed the opinion of Plaintiff's treating cardiologist, Dr. Eric Lohman, as follows:

> Eric Lohman, MD, a cardiologist, provided many records following the Meadowview visits. The claimant complained of shortness of breath consistently, with less frequent complaints of chest pain and dizziness. Respiratory examinations generally showed clear lungs. Cardiac catheterization of July 17, 2014, was essentially unchanged from the May 2013 catheterization. "We will look for noncardiac causes of chest pain and shortness of breath." Note of January 30, 2015 carried the same general tone. "She is doing well from a cardiac standpoint."
>
> Dr. Lohman completed a functional capacity form on September 4, 2015. The form set forth questions with extensive narrative from the representative, and asked for Dr. Lohman's assessment of all conditions, whether he treated them or not. Dr. Lohman limited the claimant to four hours sitting in the eight-hour workday and two

> hours standing or walking during the eight-hour workday. The claimant could lift 10 pounds occasionally. She would be off task more than 10% of the workday due to side effects of medication (after the representative recited the claimant's subjective statements).
>
> …
>
> The undersigned gives significant weight to Dr. Lohman's clinic notes and objective findings, but the undersigned does not give weight to Dr. Lohman's functional capacity questionnaire. The questionnaire asks the doctor to make assumptions, e.g. side effects of medications, which are beyond his experience with this patient and not strongly documented in the overall record. Further, the extreme limitations in the questionnaire are not compatible with his earlier statement of "She is doing well from a cardiac standpoint" (see citation above).

[TR 26-27].

Plaintiff argues that ALJ Reynolds erred in giving no weight to Dr. Lohman's functional capacity questionnaire and in failing to articulate good reasons for doing so.[3] [TR 547-49]. However, ALJ Reynolds explained that he was giving no weight to the opinions expressed in this questionnaire because Dr. Lohman's answers were based, at least in part, on suppositions that were beyond his experience with Plaintiff. [TR 24-25]. Moreover, these opinions were inconsistent with Dr. Lohman's clinical notes and objective

---

[3] In her brief, Plaintiff repeatedly indicates that Dr. Lohman limited her to sedentary work. [DE 13 at 9]. Although Dr. Lohman imposes limitations on Plaintiff that may well be consistent with sedentary work, he does not actually state that Plaintiff was limited to sedentary work. [TR 547-49]. The same is true of the opinions given by Dr. Gothra, Dr. Luking, and Dr. Reed, discussed *infra*. However, even if one of these physicians had expressed such an opinion, it would not have been entitled to any particular weight because the RFC is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3); § 416.927(d)(1)-(3).

findings, which ALJ Reynolds had reviewed and afforded significant weight. Because ALJ Reynolds gave sufficiently specific reasons for the weight given to the opinions contained in Dr. Lohman's functional capacity questionnaire, and supported that conclusion with citations to evidence in the record, the Court finds that his weighing of this treating source opinion is supported by substantial evidence.

### B. *Dr. Ghotra's Opinion*

A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her. *Id.* "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Instead, the ALJ must weigh the opinion by considering "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). While an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-examining source's opinion), deviation from this general approach is not a *per se* error of law. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

ALJ Reynolds considered the opinion of a non-treating physician, Dr. Aman Gothra, as follows:

> Dealing first with physical impairments, Aman Gothra, MD, performed a consultative examination on September 9, 2013. The claimant alleged spinal impairments, arthritis, and chronic obstructive pulmonary disease. She alleged pain all over her body. Clinical examination showed moderately decreased strength in the upper and lower extremities but good grip strength on the left side. The claimant exhibited normal reflexes, gait, and posture. She had good range of motion in all joints except for lumbar forward flexion, lumbar lateral flexion, and hip flexion. The claimant could sit in place 30 minutes, stand 15-20 minutes and walk two blocks. She could lift and carry 15 pounds and handle less than 20 pounds. She did not need assistive devices for ambulation.
>
> …
>
> The undersigned gives little weight to the consultative examiner, Dr. Gothra, as his extremely short sitting, standing, and walking intervals are not supported by the overall objective evidence.

[TR 24, 27].

In her brief, Plaintiff seems to complain that ALJ Reynolds gave little weight to Dr. Gothra's opinion, while simultaneously arguing that Dr. Gothra's opinion is of limited utility because it predates certain diagnostic tests. Both contentions can be addressed simultaneously, as this passage demonstrates that ALJ Reynolds appropriately weighed Dr. Gothra's opinion. After all, he considered the nature and extent of Dr. Gothra's treatment relationship with Plaintiff, the supportability of his opinion, and the consistency of his opinion with the record as a whole. He

13

then concluded that Dr. Gothra's opinion was entitled to little weight because his suggested limitations, based on one examination of Plaintiff, were inconsistent with the objective medical evidence in the record as a whole. Thus, the Court finds that ALJ Reynolds's weighing of this non-examining source opinion is also supported by substantial evidence.

### *C.  Dr. Reed's and Dr. Luking's Opinions*

A non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). The ALJ weighs such opinions by considering the same factors discussed in the preceding section. *Id.* Again, an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-examining source's opinion), deviation from this general approach is not a *per se* error of law. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

ALJ Reynolds evaluated the opinions of two non-examining physicians, Dr. Rebecca Luking and Dr. Jack Reed, as follows:

> Rebecca Luking, DO, a State agency medical consultant, completed a functional capacity assessment on October 16, 2013. Dr. Luking recommended lifting and carrying limits of 20 pounds occasionally and 10 pounds frequently. The claimant could stand and walk six hours in an eight-hour workday. Jack Reed, MD, a State agency medical consultant, agreed with Dr. Luking in a review of April 10, 2014.

14

> …
>
> > The undersigned gives little weight to the State agency consultants, whose opinions predate some of the submitted evidence.

[TR 24, 27].

Once again, Plaintiff seems to simultaneously maintain that ALJ Reynolds erred in his treatment of Dr. Reed's and Dr. Luking's opinions, while also pointing out that these opinions did not account for the results of certain diagnostic tests. Both arguments are meritless because the record demonstrates that ALJ Reynolds appropriately weighed these opinions. He noted that these two physicians reviewed Plaintiff's medical records, rather than actually examining her. He also explained that their opinions predated some of the submitted evidence, suggesting that they did not have a full picture of Plaintiff's condition and that their opinions were inconsistent with some of this evidence. Thus, the Court finds that ALJ Reynolds's weighing of this non-examining source opinion is also supported by substantial evidence.

### D. *Additional Considerations*

Throughout her brief, Plaintiff complains that ALJ Reynolds substituted his own medical judgment for that of the doctors involved. This thesis seems to be based, at least in part, on the fact that "the ALJ expressly stated in his decision that he was giving little to no weight to any of the physicians who had offered opinions." [DE 13 at 12]. As a preliminary matter, the Court

must clarify this assertion. Although ALJ Reynolds gave limited weight to the opinions of these physicians, as they pertained to Plaintiff's limitations, he also afforded significant weight to the clinical notes and objective findings of Plaintiff's treating physician, Dr. Lohman. Moreover, the Court is not aware of any regulation that requires an ALJ to give maximum weight to the opinion of at least one physician. ALJ Reynolds was simply required to review the medical opinions, using the criteria set forth in the regulations, and explain the weight given to each. He has satisfied that obligation, as explained *supra*.[4]

Plaintiff also bases this argument on the degree of ALJ Reynolds's consideration of the actual medical evidence. For instance, "the ALJ stated in his decision that the lumbar MRI only demonstrated 'moderate degenerative changes,' ignoring the evidence of the left foraminal disc herniation (protrusion) impinging the L4 nerve root and also ignoring the findings of spinal stenosis at three levels with the anterolisthesis on L5 on S1." [DE 13 at 6]. "Likewise, the ALJ in addressing the above referenced cardiac findings from the two catheterization procedures done by Dr. Lohman elected to focus upon the fact that such degree of stenosis was 'not felt to justify placement of

---

[4] Plaintiff also argues that, had ALJ Reynolds credited these opinions, the Medical-Vocational Guidelines would have directed a finding of "disabled." [DE 13 at 11]. However, ALJ Reynolds did not credit these opinions, for reasons explained above, and thus, he was not required to find that she was disabled under the Medical-Vocational Guidelines.

16

stents,' as if that fact meant something to him." [*Id.*]. However, these citations to the record do nothing more than prove that he painstakingly reviewed the available medical evidence. There is no indication that he substituted his own medical judgment for that of the physicians involved in this case.

On a related note, Plaintiff contends that ALJ Reynolds minimized the effect of her severe impairments that developed after ALJ York's decision. She cites a variety of evidence in the record to support her assertions about the effects of these impairments. However, this argument is merely an invitation for the Court to reweigh the evidence in the record, which is not its role. *Cutlip*, 25 F.3d at 286; *Her*, 203 F.3d at 389-90. Accordingly, the ALJ's decision must be affirmed.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Darlena Shields's Motion for Summary Judgment [DE 13] be, and is, hereby **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 15] be, and is, hereby **GRANTED**; and

(3) A Judgment will issue contemporaneously with this Memorandum Opinion and Order.

This the 11th day of May, 2017.



Signed By:
*Joseph M. Hood*   *jmh*
Senior U.S. District Judge