UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

DARLENE SHIELDS,                     )
                                     )
    Plaintiff,                   )    Civil No. 2:16-cv-170-JMH
                                     )
V.                                   )
                                     )
NANCY A. BERRYHILL,[1] Acting        )    **MEMORANDUM OPINION AND ORDER**
Commissioner of Social Security,     )
                                     )
    Defendant.                   )

\*\*\*\*

This matter is before the Court upon Plaintiff Darlene Shields's Motion to Alter the Judgment [DE 18] entered in favor of the Commissioner on May 11, 2017 [DE 16, 17]. The United States having filed a Response in Opposition [DE 19], and Plaintiff having submitted a Reply [DE 20], this matter is now ripe for the Court's review. For the reasons stated herein, Plaintiff's Motion is **DENIED.**

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days after the entry thereof. "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*,

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

428 F.3d 605, 620 (6th Cir. 2005). "[A] Rule 59(e) motion cannot be used to 'relitigate old matters, or to raise arguments … that could have been raised prior to the entry of judgment,' or 'to re-argue a case.'" *J.B.F. through Stivers v. Ky. Dept' of Educ.*, --F. App'x --, 2017 WL 2829101, at *1 (6th Cir. 2017) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

Plaintiff urges the Court to amend its judgment in order to correct a clear error of law. Specifically, Plaintiff argues that the Court erred in affirming the ALJ's administrative decision to deny benefits because it was not supported by substantial evidence. Specifically, Plaintiff alleges that the decision was flawed because the ALJ failed to properly consider the medical evidence in the record and substituted his own judgment for the medical opinions expressed therein. Because Plaintiff seems be regurgitating the same arguments presented in her initial Motion for Summary Judgment [DE 13], the Court could simply deny them as an inappropriate effort to "relitigate old matters." *Exxon Shipping Co.*, 554 U.S. at 485 n. 5. However, the Court will consider Plaintiff's arguments out of an abundance of caution.

First, Plaintiff lists several pieces of medical evidence that the ALJ allegedly disregarded, misstated, or downplayed. For

example, Plaintiff notes that Dr. Eric Lohman performed a cardiac catheterization on May 8, 2013, which revealed 40% stenosis of the left anterior descending artery, with 20% stenosis of the right coronary artery. [TR 288-89]. A subsequent catheterization on July 17, 2014 showed 30% to 40% stenosis of the left anterior descending artery, with 30% stenosis of the first diagonal branch and 20% stenosis of the mid left anterior descending artery, as well as 20% to 30% stenosis of the right coronary artery. [TR 418]. The ALJ discussed these results in the hearing decision, noting that Plaintiff's blockages "did not require stent procedures." [TR 23-24]. According to Plaintiff, "[t]he unstated but very clear implication of the foregoing was that in the ALJ's own mind [Plaintiff's] heart blockages were not significant from a physical exertion standpoint … for the simple reason that placement of stents had not been required." [DE 18 at 5]. Plaintiff emphasizes that "[n]o doctor provided an opinion to this effect." [*Id.*].

While no doctor explicitly opined that Plaintiff's blockages were less severe because they did not require stenting, the treatment notes from the catheterizations do state that further intervention was not required. Plaintiff testified to this effect as well. The ALJ considered this information along with Dr. Lohman's substantial cardiac treatment notes, which indicated that Plaintiff was responding well to medication and had less frequent

3

complaints of pain.  [TR 288–89, 413].  Dr. Lohman even said that Plaintiff "was doing well from a cardiac standpoint." [*Id.*].  To say that the ALJ found that Plaintiff's cardiac condition did not have an impact on her physical limitations because she did not require stenting is itself a mischaracterization of the ALJ's decision.  The record reflects that the ALJ gave great weight to Dr. Lohman's treatment notes and used the information contained therein to formulate Plaintiff's RFC assessment.  Because there was substantial evidence to support this aspect of the ALJ's decision, the Court's decision to affirm was not a clear error of law.

The same is true of the ALJ's handling of Plaintiff's COPD treatment.  On October 20, 2014, Dr. Yuri Villaran of Baptist Pulmonary & Critical Care compiled a Pulmonary Function Report for Plaintiff.  [TR 444].  After a follow up visit on May 26, 2015, Dr. Villaran stated that Plaintiff was "actually doing fair." [TR 511].  He also noted that Plaintiff's lungs "[we]re clear to auscultation, palpation and percussion." [*Id.*].

Plaintiff says that "the unstated but very clear implication is that the ALJ simply did not want to believe that [her] COPD … could in any way possibly be significant from a functional perspective." [DE 18 at 6].  However, there is no indication in the record that the ALJ downplayed the seriousness of her condition simply by noting her lung sounds as well as her test results.  [TR

4

RE 25].  He not only classified it as a severe impairment, but he also noted that "Baptist Pulmonary and Critical Care diagnosed severe obstructive airways disease, and pulmonary function studies showed significant deficits, although the actual office examinations showed the lungs clear to auscultation and percussion." [*Id.*].  He then included a limitation in Plaintiff's RFC that she could not tolerate smoke, fumes, or other pulmonary irritants.  [TR 22].  This record indicates that there was substantial evidence to support the ALJ's decision and, thus, that the Court did not commit a clear error of law by affirming that decision.

Plaintiff next complains that the ALJ discounted the significance of EMG and nerve conduction studies performed on May 15, 2014.  [TR 412-13].  Dr. Gerald Eichhorn wrote that the findings of these studies were "compatible with a moderate R>L carpal tunnel syndrome." [TR 413].  Similarly, Plaintiff insists that the ALJ understated the significance of left knee x-rays that revealed moderate osteoarthritis because he did not clarify that her condition was tricompartmental, nor did he incorporate the resulting limitations into her RFC assessment.

The ALJ noted both sets of findings in his administrative decision.  [TR 21-22].  He then stated that "[t]he residual functional capacity provides significant postural and manipulative

limitations" that "provide due accommodation to the severe physical impairments." [TR 27]. For example, it states that Plaintiff cannot work with her hands over her head, cannot operate foot pedal controls, and cannot climb ropes, ladders or scaffolds. [TR 21-22]. Thus, the record indicates that the ALJ did incorporate these limitations into the RFC, to the extent that he found them to be credible. Moreover, Plaintiff has not identified any additional limitations that the ALJ should have incorporated. Accordingly, the Court finds that the ALJ decision was supported by substantial evidence and that the Court's affirmance of that decision was not clear error.

Plaintiff also takes issue with the ALJ's assessment of a Radiology Report dated April 28, 2014, which states that "[a]t L3-4, there is a left foraminal protrusion impinging the exiting left L4 nerve root." [TR 410-11]. The ALJ noted that Plaintiff's "[l]umbar MRI on April 28, 2014 demonstrated moderate degenerative changes at multiple levels." [TR 25]. He later stated that "[t]he claimant has musculoskeletal complaints including the lumbar spine, but she has no nerve-root impingement or neurologic deficits, though she does have degenerative changes." [TR 26-27]. Plaintiff complains that the ALJ inaccurately summarized the MRI evidence. While there does appear to be a mistake here, the Court is hard-pressed to understand how it impacts the ALJ's decision. Even taking the nerve root impingement into account, the overall

MRI still constitutes substantial evidence to support the "moderate degenerative changes" discussed by the ALJ and factored into the RFC. Thus, the Court's affirmance of the ALJ's administrative decision was not clear error.

Plaintiff's second main argument focuses on the ALJ's failure to give great weight to any of the medical opinions. Specifically, Plaintiff argues that the ALJ's RFC assessment cannot be supported by substantial evidence because he did not give great weight to any of the medical opinions. As a preliminary matter, the Court must clarify that the ALJ did give significant weight to Dr. Lohman's treatment notes, but not his functional capacity assessment. This approach was not inconsistent with the applicable regulations, which do not require the ALJ do give any particular weight to a physician's opinion on an issue reserved to the Commissioner, such as an RFC assessment.

Moreover, the regulations do not require an ALJ to give great weight to at least one of the physician opinions in the record. Instead, ALJs are directed to weigh these opinions using the criteria set forth in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927(c). The record indicates that the ALJ did just that. Accordingly, there was substantial evidence to support the ALJ's decision. This Court's affirmance of that administrative decision cannot be clear error under such circumstances.

7

As a final matter, Plaintiff says that the denial of benefits results in manifest injustice because she is in very poor health. While the Court is sympathetic to Plaintiff's situation, it is unable to grant her Motion unless its affirmance of the ALJ's administrative decision was clear error. That was not the case here, for the reasons stated above.

Accordingly,

**IT IS ORDERED** that Plaintiff Darlene Shields's Motion to Alter Judgment [DE 18] be, and is, hereby **DENIED**.

This the 19th day of July, 2017.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge